## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JAMES D. FORCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4: 22 CV 1330 JSD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff James D. Force for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff was born on May 7, 1960.  He originally alleged a December 12, 2016, onset date, when he was 56 years old, but amended it to September 9, 2019 at his administrative hearing. He filed his application on September 19, 2019, alleging disability due to migraines, dizziness, hot flashes, and chronic back, knee, shoulder, and joint pain.  (Tr. 324).  His application was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 194-203, 213-17).

On November 23, 2021, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 12-23). The Appeals Council denied his request for review. (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. ADMINISTRATIVE RECORD

The Court adopts Plaintiff's Unopposed Statement of Facts (ECF No. 10-1), along with Defendant's Response to Plaintiff's Statement of Uncontroverted Facts (ECF No. 11-2). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court will discuss specific facts in detail where relevant to this appeal.

## III. DECISION OF THE ALJ

On November 23, 2021, following a hearing, an ALJ found that Plaintiff was not disabled. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 9, 2019, his amended alleged onset date. At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, right shoulder tendinitis, depressive disorder, anxiety disorder, impulse control disorder, and post-traumatic stress disorder. At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of a listing for presumptive disability. (Tr. 15).

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of "medium" work as defined under the regulations.[1] He could frequently stoop, kneel, crouch,

---

[1] *See* 20 C.F.R. § 416.967(c) (stating that medium work requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds);

- 2 -

crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, but needed to avoid workplace hazards. He could frequently reach overhead. He was limited to simple, routine tasks with minimal changes in duties and setting, occasional public interaction, and no fast-paced production work. (Tr. 17).

At step four, the ALJ found that Plaintiff could not perform his past relevant work (PRW) as a forklift operator and yard worker. Relying on vocational expert testimony, the ALJ concluded that plaintiff's impairments would not preclude him from performing other work that exists in significant numbers in the national economy, including medium work as an assembler, packer, and warehouse worker. (Tr. 23, 80-81). Thus, the ALJ found Plaintiff was not disabled under the Act. (Tr. 23).

## IV.  STANDARD OF REVIEW

The Court's role on judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings applied the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the

---

Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 (clarifying that medium work generally requires standing or walking, off and on, for six hours and sitting intermittently during the remaining time of an eight-hour workday).

decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps one through three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step four requires the Commissioner to consider whether the claimant retains the RFC to perform PRW. *Id.;* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at step five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## V.   DISCUSSION

Plaintiff argues the ALJ erred in finding he could perform medium work because, in formulating his RFC, the ALJ did not assess any limitations in his ability to stand and/or walk in violation of SSR 96-8p.  He argues the ALJ erred in relying on outdated medical opinions and his own interpretation of the medical records.  He argues the ALJ failed to assess his RFC in a function-by-function manner and in not supporting the RFC with some medical evidence.  Plaintiff contends the record evidence demonstrates that he was restricted in his ability to stand and/or walk and, had the ALJ properly considered this, he may have been found unable to perform medium exertional work.

Plaintiff further argues that even if the ALJ's RFC can be implied as finding no limitation in his ability to stand and walk, such a finding is not supported by substantial evidence.  He notes that both State agency physicians who reviewed his medical records, Dr. Ceaser and Dr. Murray, found that he was limited to standing and/or walking "for a total of about six hours in an eight-hour workday." (Tr. at 116, 179).  He notes his long-time treating physician, Dr. Olusanya, opined that he could stand for only one hour at a time, (Tr. at 861), and notes his own testimony at his hearing that he could be on his feet for only "about an hour at the most." (Tr. at 75).  He notes both Dr. Ceasar's and Dr. Murray's opinions pre-dated significant evidence supporting the presence of more extensive restrictions in his physical functioning, specifically right shoulder pain, and neither doctor had the opportunity to review the evidence concerning his shoulder impairment or Dr. Olusanya's medical opinion demonstrating greater limitations than they found.  Finally, he asserts the ALJ's reliance on his activities of daily living do not provide substantial support for the

ALJ's RFC.  He argues as a result, the ALJ's RFC is not supported by substantial evidence.  This Court disagrees.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record.  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  The claimant has the burden to establish RFC.  *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).  The RFC need only include the limitations supported by the record.  *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

Here, the ALJ determined that plaintiff retained the RFC to perform medium work as defined under the regulations.  He is able to frequently climb ladders, ropes, scaffolds, ramps and stairs.  He is able to frequently stoop, kneel, crouch and crawl.  He is able to frequently reach overhead with the bilateral upper extremities.  He must avoid hazards such as unprotected heights and moving mechanical parts.  He is able to complete simple, routine tasks with minimal changes in job duties and job setting.  He must avoid fast-paced production work and more than occasional interaction with the general public.  (Tr. 17).

In making his RFC finding, the ALJ discussed Plaintiff's minimal treatment for his back and shoulder impairments.  (Tr. 18-19).  A lumbar spine x-ray in August 2019, one month prior to his alleged onset, showed only minimal degenerative changes.  (Tr. 63, 593).  In October 2019,

Plaintiff started primary care treatment with Oluyomi Olusanya, M.D., for his mental impairments and opioid addiction that was in remission. (Tr. 676-77). In November 2019, Plaintiff saw Dr. Olusanya for psychotropic medication refills. (Tr. 670, 673). On examination, he had full strength and range of motion. (Tr. 18, 670). In December 2019, when Plaintiff saw a nurse practitioner under Dr. Olusanya, he reported groin pain due to an old hernia. (Tr. 664). On examination, he was in no acute distress and walked with a normal gait. (Tr. 18, 63, 664). He displayed full range of motion in all joints and full strength (5/5) in his arms and legs. (Tr. 18, 664-65).

During an examination in January 2020 with Dr. Olusanya, Plaintiff complained of numbness and pain in his fourth and fifth fingers when lying down. He denied any difficulties walking and his examination was unremarkable. (Tr. 682).

A March 2020 consultative evaluation with Yasuo Ishida, M.D., revealed lumbar tenderness and slight difficulty changing positions. He had diminished range of motion in his cervical and lumbar spines, shoulders, elbows, wrists, and hips, but he had full strength in his arms and legs. His grip strength was normal, and he was able to make a fist with each hand, though he had some difficulty with buttons in both hands. He had a slow gait and difficulty walking on his heels and toes, but did not require an assistive device. Dr. Ishida noted Plaintiff's effort was "fair." (Tr. 18, 693-95).

July 2020 x-rays of Plaintiff's knees were normal, and a lumbar spine x-ray showed minimal degenerative changes. Shortly thereafter he was seen in Dr. Olusanya's office for follow up on opiate dependence. His back and extremity examinations were normal. In August 2020, Plaintiff saw Dr. Olusanya and complained of joint pain in his back, shoulder, and fingers.

Examination showed he was in no acute distress with a normal gait, and there was no indication of diminished range of motion or decreased muscle or grip strength. (Tr. 18-19, 740-4, 751).

In October and December 2020, Plaintiff reported pain in his shoulders. A right shoulder apprehension test, used to show imminent shoulder dislocation when placing the arm in abduction and external rotation, was positive, but Plaintiff showed no deficits in arm strength or range of motion. His gait was normal. In February 2021, Plaintiff reported right shoulder pain that worsened with movement. Examination showed his right shoulder range of motion was painful and apprehension test was positive. Dr. Olusanya noted no evidence of diminished strength. An MRI showed rotator cuff tendonitis. (Tr. 19, 783, 826-841).

In April 2021, Plaintiff saw orthopedist Sylvester Yuolo, M.D., for his shoulder pain. Plaintiff reported that he had been recently "working overhead." On examination, he had tenderness in his shoulders, and range of motion was mostly intact. He had good strength in his arms. Dr. Yuolo diagnosed rotator cuff tendinitis and administered injections in both shoulders. Plaintiff later reported to Dr. Olusanya that the injections helped and he was able to move his shoulders. (Tr. 19, 782-784).

During a July 2021 follow-up with Dr. Yuolo, Plaintiff reported improvement in his left shoulder but continued right shoulder pain while reaching overhead. He reported pain and numbness in his hands. An examination showed tenderness in his right shoulder but intact range of motion and good strength in his arms. Dr. Yuolo noted no deficits in his hands. He ordered electromyography testing which showed no evidence of neuropathy or carpal tunnel syndrome. An August 2021 hand examination was "unrevealing." Plaintiff told Dr. Olusanya that he wanted to defer shoulder surgery because he felt better. (Tr. 19, 774-79, 813).

During a September 2021 visit with Dr. Olusanya, Plaintiff reported back pain but that his shoulder pain was stable.  Dr. Olusanya observed "great" range of motion in Plaintiff's right shoulder and no deficits in strength.  (Tr. 849).

In his decision, the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence. (Tr. 18, 21).  He noted Plaintiff testified at his hearing that he had pain in his shoulders that made it difficult to reach overhead, but that his symptoms improved with injections.  (Tr. 21, 72).  Dr. Olusanya observed great range of motion.  Examinations showed good strength in his extremities.  (Tr. 665, 670, 694-95, 777-78, 783, 849).  The ALJ noted Plaintiff's testimony that his back pain made it difficult for him to stand for more than one hour before needing to sit.  (Tr. 21, 75).  Although the consultative examination showed some diminished range of motion, Plaintiff consistently ambulated with a normal gait and imaging showed only minimal degenerative changes in the lumbar spine.  (Tr. 593, 693-95, 740-42, 744, 753, 820, 822, 827, 830, 833, 836, 839, 841, 844).  Moreover, Plaintiff sought minimal treatment for back and other joint pain, as his treatment under Dr. Olusanya was for other issues.  (Tr. 744-62, 812-46).  Accordingly, the ALJ found that Plaintiff could perform medium work with additional postural, reaching, and environmental limitations.  (Tr. 17, 21).

The ALJ also considered Plaintiff's activities of daily living.  (Tr. 16, 21).  Plaintiff testified that he lived in  a two-bedroom home with his wife, who was disabled due to mental impairments. (Tr. 67-68).  He reported that he spent his typical day watching television and playing cards.  (Tr. 18, 334).  However, he also performed personal care activities, prepared meals, and performed household chores like cleaning and laundry.  (Tr. 16, 18, 73, 334-35, 345).  He drove, went out

alone, shopped for groceries, and used public transportation.  (Tr. 336, 347).  During a March 2020 psychological evaluation, Plaintiff reported that he regularly goes fishing by himself.  (Tr. 704).  While these facts alone do not prove that Plaintiff was able to perform work-related tasks, it provides substantial evidence that his condition was not disabling.  *Cf., Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (claimant's statement that she could perform various activities, including light housework, preparing meals, doing laundry, and shopping, "undermine[d] her assertion of total disability").

      The ALJ's RFC drew additional support from prior administrative medical findings of State agency medical consultants Nancy Ceaser, M.D., and Jane Murray, M.D.  For claims such as here that were filed after March 27, 2017, an ALJ focuses on the persuasiveness of each medical opinion or prior administrative medical finding using the five regulatory factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other relevant factors (such as whether the source understands the agency's disability program and evidentiary requirements).  20 C.F.R. § 416.920c(c).  After reviewing the evidence available in July 2020 and February 2021, Dr. Ceaser and Dr. Murray opined Plaintiff could perform the exertional requirements of medium work, including six hours of standing or walking.  They further opined that Plaintiff could frequently climb, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders, ropes, and scaffolds, but that Plaintiff needed to avoid concentrated exposure to hazards.  (Tr. 116-17, 179-81).

      The ALJ found the consultants' assessments persuasive because they were supported by a detailed review and summary of the available medical evidence.  The ALJ also noted that their assessments were consistent with Plaintiff's treatment notes, which showed that Plaintiff's

shoulders improved following an injection. In addition, the ALJ noted the assessments were consistent with the minimal degenerative changes revealed by lumber spine imaging, as well as Plaintiff's consultative examination, which showed diminished range of motion in the spine but ambulation with a normal gait. Consistent with the consultants' assessments, the ALJ limited Plaintiff to medium work with postural and environmental restrictions, but also added a limitation of frequent, as opposed to constant, overhead reaching to account for Plaintiff's shoulder impairments. (Tr. 17, 21, 116-19, 179-81, 593, 692-95, 740-42, 777-78, 849).

As to Plaintiff's assertion that the RFC contained no limitations in his ability to stand or walk, the ALJ found that Plaintiff could perform medium work, which requires standing and walking off and on for six hours of an eight-hour workday. (Tr. 17). *See* SSR 83-10, 1983 WL 31251, at *6. The ALJ's decision demonstrates that he did not overlook Plaintiff's standing and walking abilities, but instead found that Plaintiff was not limited in those areas beyond the exertional requirements of medium work. *Cf. Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (ALJ's decision implicitly found that Plaintiff had no limitations in sitting, standing, and walking, and there was no reason to remand for more explicit findings in the form of a function-by-function analysis).

As to Plaintiff's argument that prior administrative medical findings conflict with the ALJ's RFC, Plaintiff is incorrect. As Plaintiff notes, agency consultants Drs. Ceaser and Murray concluded that Plaintiff could stand or walk for about six hours in an eight-hour workday. Under SSR 83-10, that is the specified standing and walking required for medium work. Plaintiff cites the portion of the regulation stating that "[i]n most medium jobs, being on one's feet for most of the workday is critical." However, the preceding paragraph in the ruling specifies the actual

amount of time that a person must be on his feet to perform medium work, i.e., six hours. *See* SSR 83-10. Plaintiff states in his brief that the record evidence demonstrates he can be on his feet at most six of the eight hours in a workday, Pl.'s Br. at 5, and it therefore follows that he can perform the walking and standing required by the RFC finding.

Plaintiff also cites his testimony and his wife's function report in support of his standing limitations. In opposition, as discussed above, the ALJ gave legitimate reasons for finding that Plaintiff's subjective complaints were not entirely consistent with the record evidence. The issue before this Court is whether substantial evidence supports the ALJ's findings, not whether Plaintiff can cite some evidence that might support a contrary conclusion. *See Fentress v. Berryhill,* 854 F.3d 1016, 1021 (8th Cir. 2017)( We may not reverse that decision simply because we would have reached a different conclusion than [the Commissioner] or because substantial evidence supports a contrary conclusion.").

Plaintiff specifically cites Dr. Olusanya, who opined that Plaintiff could stand for only one hour at a time, lift less than ten pounds, and rarely reach or handle. Dr. Olusanya further opined that Plaintiff would be absent more than four days per month. The Court finds that the ALJ reasonably determined that Dr. Olusanya's opinion was not persuasive because it was not supported by his own treatment notes, which showed improvement in Plaintiff's shoulders following injections, no deficits in Plaintiff's strength or range of motion, and normal gait. Likewise, Dr. Olusanya's opinion concerning Plaintiff's standing and walking limitations was inconsistent with his own examination findings and treatment notes and the minimal degenerative changes revealed by imaging. (Tr. 20-21, 593, 740-62, 812-46). The ALJ also noted Dr. Olusanya provided no support for his assessment of excessive absences. (Tr. 20, 862).

Plaintiff further claims that the ALJ improperly relied on the State agency medical consultants' findings because they did not examine him. This Court disagrees. A medical source's relationship with the claimant is just one factor that an ALJ considers when evaluating medical opinions. *See* 20 C.F.R. § 416.920c(c); *see also Bowers v. Kijakazi,* 40 F.4th 872, 875-76 (8th Cir. 2022) ("[C]onsidering the State agency physicians' opinions was not itself an error, because the ALJ must consider all relevant evidence."); *Morton v. Saul,* No. 2:19-CV-92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021) ("[T]he new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation. The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice.") (citations omitted). The regulations state consistency and supportability are the two most important factors, the same factors the ALJ cited in finding the consultants' assessment persuasive.  (Tr. 21).  20 C.F.R. § 416.920c(b)(2). Plaintiff's argument that the consultants did not have access to all of the record evidence is without merit as well. Even assuming this were true, it does not undermine the ALJ's reliance on their findings, as the ALJ considered the entire administrative record, including any evidence that the consultants were not able to review.

Plaintiff finally argues that the ALJ did not explain how the record evidence on which he relied related to Plaintiff's functional abilities. An ALJ is not required to list each limitation of the RFC followed by the specific evidence that supports it. *See Cichocki v. Astrue*, 729 F.3d 172 (2d Cir. 2013) (ALJ's failure to engage in explicit function-by-function RFC analysis does not require remand where the ALJ's analysis provides a basis for meaningful review, applies the correct legal standards, and is supported by substantial evidence). The ALJ relied on evidence that a

"reasonable mind" would accept as adequate to support the conclusion that Plaintiff could perform a range of medium work that required only frequent reaching overhead.  *See Pates Fire v. Astrue*, 564 F.3d 942.  Therefore, the ALJ committed no error.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment is issued herewith.

Dated this 5th day of June, 2023.

                                                **JOSEPH S. DUEKER**
                                                **UNITED STATES MAGISTRATE JUDGE**